UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Kacey White and Charles Stotts, | Case No. 21-cv-0371 (WMW/KMM) |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| City of Minneapolis and Mayor Jacob Frey, | |
| Defendants. | |

---

Before the Court is Defendants City of Minneapolis and Mayor Jacob Frey's motion for judgment on the pleadings. (Dkt. 13.) Defendants seek judgment in their favor as to four of the five claims alleged in the complaint. Plaintiffs Kacey White and Charles Stotts oppose the motion. For the reasons addressed below, the motion is granted, Plaintiffs' federal law claims are dismissed and the remaining state-law claim is remanded to Hennepin County District Court, Fourth Judicial District.

## BACKGROUND

White and Stotts are residents of Minneapolis, Minnesota, who own the Town Talk Diner & Gastropub (Town Talk), a restaurant in Minneapolis. Defendants are the City of Minneapolis and its mayor, Jacob Frey. Town Talk burned to the ground during the unrest in Minneapolis following the May 25, 2020 murder of George Floyd.

Plaintiffs allege that, in the days following Floyd's death, Defendants failed to sufficiently deploy and instruct law enforcement personnel, resulting in property destruction and unrest. On May 28, 2020, after days of unrest in Minneapolis, White and

Stotts went to Town Talk to assess the condition of their restaurant and discovered extensive damage. White and Stotts boarded up the windows of Town Talk, hoping to prevent further destruction.

Plaintiffs allege that, on the evening of May 28, 2020, Mayor Frey refused to permit law enforcement officers to use methods that would effectively curb the unrest, resulting in an escalation of violence and destruction. Plaintiffs also allege that Mayor Frey and Minneapolis failed to request or provide the personnel necessary to quell the protests—including early deployment of Minnesota National Guard personnel. Plaintiffs allege that Mayor Frey's eventual decision to instruct officers to abandon the police station in the Third Precinct, where Town Talk was located, left citizens alone to defend themselves and their property. According to Plaintiffs, citizens who lived or owned business in the neighborhood surrounding the Third Precinct were not consulted regarding the decision to abandon the precinct. Plaintiffs allege that, when issuing this directive, Mayor Frey deviated from the norm and ignored the chain of command that typically controls such decisions.

During the evening of May 28, 2020, more buildings burned. Citizens who called 911 allegedly either received no response or were told that, unless the situation was "life threatening," they would not be assisted for several days. Plaintiffs allege that Mayor Frey and Minneapolis did not request necessary law enforcement reinforcements and that firefighters refrained from entering the protest zone, due in part to their fear of operating without police protection. At 3:30 a.m. on May 29, 2020, Town Talk was set on fire. At 3:45 a.m., Minnesota Governor Tim Walz deployed the National Guard to secure the Third

Precinct. Town Talk continued to burn through the early hours of that morning. By 8:19 a.m. on May 29, 2020, Town Talk had burned to the ground.

Plaintiffs allege that Mayor Frey and Minneapolis failed to respond appropriately to the seriousness of the unrest and failed to follow existing policies that governed how to halt and quell agitators. Plaintiffs allege that these failures caused them to suffer more than $4.5 million in damages.

Plaintiffs commenced this action in Hennepin County District Court, Fourth Judicial District, and Defendants removed this action to this Court on February 8, 2021. Plaintiffs' complaint advances five claims. Plaintiffs' first claim alleges that Defendants violated Plaintiffs' procedural-due-process rights in violation of the Fourteenth Amendment to the United States Constitution by failing to quell the agitators and provide Plaintiffs with pre-deprivation notice and a hearing. Plaintiffs' second claim alleges that Defendants violated Plaintiffs' substantive-due-process rights in violation of the Fourteenth Amendment by failing to adequately protect Plaintiffs' property. Plaintiffs' third claim alleges that Defendants neglected to prevent agitators' wrongful acts that harmed Plaintiffs, in violation of 42 U.S.C. § 1986. Plaintiffs' fourth claim alleges that Defendants' actions resulted in a taking of Plaintiffs' property without just compensation, in violation of the Minnesota Constitution. Plaintiffs' fifth claim alleges that Defendants failed to respond adequately to Plaintiffs' public-records request, in violation of the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. § 13.03, subdiv. 2(a); Minn. R. 1205.0300. Defendants seek judgment on the pleadings in their favor as to Plaintiffs' first four claims.

## ANALYSIS

A party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The same legal standard used to evaluate a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., applies to a motion for judgment on the pleadings, *see Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions couched as factual allegations may be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although matters outside the pleadings generally may not be considered when deciding a motion to dismiss, a district court may consider documents necessarily embraced by the pleadings. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Materials are necessarily embraced by the pleadings when a complaint alleges the contents of the materials and no party questions their authenticity. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). For instance, the contract on which a breach-of-contract claim rests ordinarily is embraced by the pleadings. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). As such, the Court may properly consider such documents when deciding Defendants' motion for judgment on the pleadings.

4

Plaintiffs advance their federal constitutional claims pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. For a plaintiff to state a claim for relief pursuant to Section 1983, the plaintiff must allege both a violation of a federally protected right and that the violation occurred under the color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A Section 1983 claim against a municipality cannot be based on vicarious liability. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). But a municipality may be subject to Section 1983 liability if the inadequate training of its employees, a municipal policy, or an unofficial municipal custom causes a constitutional injury. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (training); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, (1978) (policy or custom); *see also Bd. of Cnty. Comm'rs*, 520 U.S. at 403–04. The Court addresses, in turn, each of Plaintiffs' federal-law claims.[1]

---

[1] At the August 31, 2021 hearing, Plaintiffs' counsel cited *Hunters Capital LLC v. City of Seattle*, 499 F. Supp. 3d 888 (W.D. Wash. 2020), to support Plaintiffs' contention that Defendants can be held liable for the alleged damage to Plaintiffs' property. As Plaintiffs' counsel conceded at the hearing, *Hunters Capital* is a case from another district and is, at most, only persuasive authority in this case. In addition, the circumstances of *Hunters Capital* and this case differ in significant respects, notwithstanding the fact that both disputes involve lawsuits against a city for property damage following public unrest. In *Hunters Capital*, the City of Seattle, for almost a full month, not only withdrew its police force from an approximately seven-acre area, but also allowed and helped protestors to set up encampments and establish a self-ruled zone. 499 F. Supp. 3d at 893–98. The City of Seattle and its mayor also allegedly actively supported the protestors—setting up hygiene

I.      **Plaintiffs' Procedural-Due-Process Claim (Count One)**

Plaintiffs allege that Defendants violated their right to procedural due process, as guaranteed by the Fourteenth Amendment.

Procedural-due-process claims are reviewed in two steps. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). The first step is to determine whether the plaintiff has been deprived of a protected liberty or property interest. *Id.* If no liberty or property interest exists, there can be no due-process violation. *See Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). If the plaintiff has a protected liberty or property interest, however, the second step is to consider what process is due. *Senty-Haugen*, 462 F.3d at 886 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976)).

"Protected property interests are created by state law, but federal law determines whether the interest rises to the level of a constitutionally-protected property interest." *Ellis v. City of Yankton*, 69 F.3d 915, 917 (8th Cir. 1995). Minnesota law limits "the property rights that are entitled to due process to real property rights, final judgments, and certain vested statutory rights." *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 658 (Minn. 2012).

---

stations, supplying concrete barriers and publicly defending the protestors' occupation of the area. *Id.* at 894–97 ("[O]n June 21, the Mayor allegedly issued a statement indicating that the 'City still had no plans to cease supporting [the protest zone] and that the City was instead acting to work with and preserve [the protest zone]' "). Here, by contrast, Plaintiffs' allegations involve a shorter period, four days, in which the Mayor and City of Minneapolis withdrew officers from the Third Precinct to protect the officers. Plaintiffs do not allege that Defendants actively supported any third-party agitators—whether by providing resources to the agitators or by issuing public statements in which they expressed a desire to preserve the unrest. For these reasons, *Hunters Capital* is inapposite.

The two conceivable interests that may be inferred from Plaintiffs' complaint are a real property interest in Town Talk and an interest in having that real property protected. The Court addresses each interest in turn.

### A.     Plaintiffs' Interest in Real Property

The "actual ownership of real estate" is one of the property interests protected by the Due Process Clause. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571–72 (1972). As noted above, Minnesota state law recognizes real estate as a property interest. *Schatz*, 811 N.W.2d at 658. Here, Plaintiffs' claimed property interest is in real estate: Town Talk. Plaintiffs' alleged deprivation is, therefore, subject to review under the two-step analysis for procedural-due-process violations. But as a threshold matter, the Court must determine whether Plaintiffs have standing to assert such a claim. *See* Fed. R. Civ. P. 12(h)(3) (providing that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

Federal jurisdiction extends only to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *accord Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994). To satisfy the case-or-controversy requirement of Article III of the United States Constitution, a plaintiff must establish standing as an "indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *accord Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). To meet this standing requirement, the plaintiff must (1) have suffered an injury in fact, (2) establish a causal relationship such that the alleged injury is fairly traceable to the defendant's challenged

7

conduct, and (3) show that a favorable decision would redress the injury. *Lujan*, 504 U.S. at 560–61; *accord Hargis*, 674 F.3d at 790.

To establish Article III standing, Plaintiffs must demonstrate that the alleged injury is fairly traceable to Defendants' allegedly illegal conduct. *Lujan*, 504 U.S. at 560. For an injury to be fairly traceable to a defendant's conduct, it must not be the result of "the independent action of some third party not before the court." *Id.* (internal quotation marks omitted). An alleged injury may be fairly traceable to a defendant if the injury is "produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). As such, traceability may be established based on "the predictable effect of Government action on the decisions of third parties" as opposed to "mere speculation about the decisions of third parties." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019).

Here, the injury Plaintiffs allege arises from the destruction of their real property. Specifically, Plaintiffs allege that they were deprived of the right to exclude others from their property, to access their property and to the use and quiet enjoyment of their property. These alleged deprivations were undisputedly committed by the independent actions of third-party agitators, and not in concert with or at the behest of Defendants. Plaintiffs do not allege that Defendants vandalized, trespassed upon or set fire to Plaintiffs' property. As such, Plaintiffs fail to allege a causal connection between their alleged injuries and Defendants' conduct and, therefore, lack Article III standing as to this claim. Accordingly, Plaintiffs cannot maintain a procedural-due-process claim against Defendants based on their inability to make use of their real property following Town Talk's burning.

### B. Plaintiffs' Interest in Government Protection

Plaintiffs also appear to allege an interest in government protection of their real property. "[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colls.*, 408 U.S. at 571–72. Individuals can have a statutorily created "property" interest in the continued receipt of government benefits, such as Social Security disability benefits. *Mathews*, 424 U.S. at 332; *see Goldberg v. Kelly*, 397 U.S. 254, 264 (1970).

Citizens do not, however, have a property interest in government services or protection. *See Harpole v. Ark. Dep't of Hum. Servs.*, 820 F.2d 923, 926 (8th Cir. 1987) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 812 F.2d 298, 301 (7th Cir. 1987)). As the Supreme Court of the United States has explained:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

Plaintiffs seem to allege that they were deprived of procedural due process through Defendants' failure to provide police, failure to use force, failure to follow an unidentified city policy, failure to call in the National Guard, and failure to provide fire protection. Each of these allegations involves a failure to provide government services in which Plaintiffs

9

have no *constitutionally* protected interest. Defendants' alleged failure to provide these government services, therefore, cannot amount to a violation of Plaintiffs' procedural-due-process rights.

For these reasons, the Court concludes that Plaintiffs have not alleged a constitutionally protected interest in either their real property or in government services that has been violated by Defendants' conduct.[2] The Court, therefore, grants Defendants' motion for judgment on the pleadings as to Plaintiffs' procedural-due-process claim.

## II. Plaintiffs' Substantive-Due-Process Claim (Count Two)

Plaintiffs allege that Defendants violated their right to substantive due process as guaranteed by the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment protects "individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Id.* (internal quotation marks omitted). Courts must exercise extreme caution when elevating

---

[2]     Even if Plaintiffs had alleged the violation of a constitutionally protected interest, it is not clear to which pre-deprivation process they would be entitled. As Defendants observe in their reply brief, the idea that the government would hold "immediate trials for the Lake Street Area business owners whose property was at risk" "ignores Plaintiffs' own allegations about the seriousness of the civil unrest that was ongoing and escalating."

particular interests to the status of fundamental constitutional rights, because recognizing these rights, "to a great extent, place[s] the matter outside the arena of public debate and legislative action" and risks transforming the Due Process Clause into the court's policy preferences. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). When determining whether a claimed right is fundamental, courts require "a careful description of the asserted fundamental liberty interest." *Id.* at 721 (internal quotation marks omitted). Vague generalities are insufficient. *Chavez v. Martinez*, 538 U.S. 760, 776 (2003).

In their complaint, Plaintiffs allege two substantive-due-process rights: a right to police and fire protection and a right to be protected from state-created dangers. The Court addresses each alleged fundamental right in turn.

### A. Plaintiffs' Alleged Right to Police and Fire Protection

"For purposes of substantive due process analysis, fundamental rights are those deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Flowers*, 478 F.3d at 873 (internal quotation marks omitted). As addressed above, the Due Process Clause of the Fourteenth Amendment does not impose upon the government an affirmative obligation "to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 195. The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 196. Here, Plaintiffs allege that Defendants' failure to provide adequate fire and police protection during a week of unrest violated Plaintiffs' fundamental rights. That is, Plaintiffs allege that the Due Process Clause enshrines a fundamental right to police and

11

fire protection provided by a municipality, a right of which Plaintiffs claim to have been deprived. No legal authority recognizes the existence of such a right, and this Court declines to do so. *See id.*

### B. Plaintiffs' Alleged Right to Protection from State-Created Dangers

The general rule, as addressed above, is that the government need not protect citizens from harm by private actors. *Id.* at 197. But under the "state-created danger" exception to this general rule, "the state owes a duty to protect individuals if [the state] created the danger to which the individuals are subjected." *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011) (internal quotation marks omitted). Courts have applied this exception to situations in which "the individuals would not have been in harms way but for the government's affirmative actions." *Carlton v. Cleburne County*, 93 F.3d 505, 508 (8th Cir. 1996). To succeed on a state-created-danger theory of liability, a plaintiff must prove "(1) that she was a member of a limited, precisely definable group, (2) that the municipality's conduct put her at a significant risk of serious, immediate, and proximate harm, (3) that the risk was obvious or known to the municipality, (4) that the municipality acted recklessly in conscious disregard of the risk, and (5) that in total, the municipality's conduct shocks the conscience." *Fields*, 652 F.3d at 891 (internal quotation marks omitted). Here, Plaintiffs' allegations are insufficient as to at least the first and fifth elements.

Under the first element, Plaintiffs must allege membership in a "limited, precisely definable group." *Id.* (internal quotation marks omitted). "The general public is not a limited, precisely definable group, and the state-created-danger doctrine does not apply" to

the general public. *Glasgow v. Nebraska*, 819 F.3d 436, 442 (8th Cir. 2016) (internal quotation marks omitted). Here, Plaintiffs seem to allege that they are members of an affected group that includes, at least, all residents and business owners in the Third Precinct, if not an affected group that consists of any member of the public within Minneapolis. Because either group can be fairly understood to be the general public, Plaintiffs fail to allege facts that plausibly establish the first element of the state-created-danger theory of liability.

The fifth element of a state-created-danger claim is that the municipality's behavior must "shock the conscience." *Fields*, 652 F.3d at 891 (internal quotation marks omitted). "Actionable substantive due process claims involve a level of abuse of power so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Id.* (internal quotation marks omitted). Under this theory, "negligence and gross negligence cannot support a § 1983 claim alleging a violation of substantive due process rights." *Id.* Proof of an intent to harm usually is required. *Id.* Although in some cases proof of deliberate indifference is sufficient to demonstrate conscience-shocking behavior, this is true only when actual deliberation is practicable. *Id.* In this case, deliberation was not practicable. Defendants were responding to a volatile situation and did not have sufficient time to deliberate. Given the insufficient time for Defendants to deliberate, Plaintiffs must prove intent to harm in order to establish behavior that shocks the conscience. *Id.* Plaintiffs do not allege that Defendants intended to cause the resulting harm—that is, the destruction of businesses in the neighborhood.

The Court concludes, for these reasons, that Plaintiffs have not plausibly alleged a substantive-due-process claim based on either a right to government protective services or a state-created danger and, therefore, grants Defendants' motion for judgment on the pleadings as to Plaintiffs' substantive-due-process claim.

### III. Plaintiffs' 42 U.S.C. § 1986 Claim (Count Three)

Plaintiffs allege that Defendants violated 42 U.S.C. § 1986 by neglecting to prevent the destruction of their private property. Section 1986 provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . . .

42 U.S.C. § 1986. "A section 1986 claim must be predicated upon a valid section 1985 claim." *Gatlin ex rel. Est. of Gatlin v. Green*, 362 F.3d 1089, 1095 (8th Cir. 2004). Section 1985 generally proscribes five types of conspiracies:

> (1) conspiracies to interfere with the performance of official duties by federal officers (section 1985(1)); (2) conspiracies to interfere with the administration of justice in federal courts (first clause of section 1985(2)); (3) conspiracies to interfere with the administration of justice in state courts (second clause of section 1985(2)); (4) private conspiracies to deny any person enjoyment of equal protection of the laws and equal privileges and immunities under the laws (first clause of section 1985(3)); and (5) conspiracies to interfere with the right to support candidates in federal elections (second clause of section 1985(3)).

14

*Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986) (internal quotation marks mitted).

Because Plaintiffs have not alleged that the federal government is implicated by the alleged conspiracy—which is required for categories one, two and five—Plaintiffs' claimed Section 1985 violation must fall within either the third or fourth category. *Id.*; *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Both the third and the fourth categories require a Plaintiff to allege membership in a class subject to invidious discrimination. *Harrison*, 780 F.2d at 1429; *see also Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971). Plaintiffs do not allege membership in a protected class and, therefore, have failed to state a claim under any of the categories of conspiracy identified in Section 1985. Having failed to allege a Section 1985 conspiracy, Plaintiffs fail to allege a violation of Section 1986.

The Court, therefore, concludes that Plaintiffs fail to plausibly allege a violation of Section 1986 and grants Defendants' motion for judgment on the pleadings as to this claim.

**IV.     Plaintiffs' Takings Claim (Count Four)**

In their complaint, Plaintiffs appear to allege a takings claim based on the Minnesota Constitution by way of 42 U.S.C. § 1983. But Section 1983 creates a cause of action for violations of federal law, not state law. *See Gomez*, 446 U.S. at 640. No cause of action exists under Section 1983 for a violation of a state constitutional right.

Minnesota provides a process by which a party may seek just compensation for an alleged taking. "When the government has taken property without formally using its eminent domain powers, the property owner has a cause of action for inverse condemnation." *Nolan & Nolan v. City of Eagan*, 673 N.W.2d 487, 492 (Minn. Ct. App.

2003) (citing *Alevizos v. Metro. Airports Comm'n of Minneapolis & St. Paul*, 216 N.W.2d 651, 657 (Minn. 1974)). "Actions for inverse condemnation must be brought to the court through an action in mandamus." *Id.* (citing *Thomsen v. State*, 170 N.W.2d 575, 580 (Minn. 1969)); *see Rockler v. Minneapolis Cmty. Dev. Agency*, 866 F. Supp. 415, 417 (D. Minn. 1994) (dismissing federal takings claims when state remedies had not been exhausted). Moreover, a plaintiff may not pursue a state-law takings claim under the Minnesota Constitution until the plaintiff has first filed a mandamus action in state court. *Am. Fam. Ins. v. City of Minneapolis*, 836 F.3d 918, 924 (8th Cir. 2016). For this reason, Plaintiffs' state-law takings claim is not properly before this Court.

The Court, therefore, grants Defendants' motion for judgment on the pleadings as to this claim.

## V.     Plaintiffs' Remaining State-Law MGDPA Claim (Count Five)

Having granted Defendants' motion for judgment on the pleadings, only Plaintiffs' state-law claim pursuant to the Minnesota Government Data Practices Act remains. A district court may decline to exercise supplemental jurisdiction over a plaintiff's state-law claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (describing the decision of whether to exercise supplemental jurisdiction after all claims within a district court's original jurisdiction are dismissed as "purely discretionary"). Although a federal district court may continue to exercise supplemental jurisdiction, it should "exercise judicial restraint and avoid state law issues wherever possible." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).

When, as here, the "resolution of the remaining claims depends solely on a determination of state law," it is appropriate for a federal district court to decline to exercise supplemental jurisdiction over such claims. *See Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (internal quotation marks omitted); *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))). For this reason, the Court declines to exercise supplemental jurisdiction over the remaining state-law claim in Plaintiffs' complaint and remands the case to state court.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' motion for judgment on the pleadings, (Dkt. 13), is **GRANTED**.

2. Plaintiffs' federal-law claims, (Counts One, Two, Three, and Four), are **DISMISSED**.

3. This case is **REMANDED** to Hennepin County District Court, Fourth Judicial District.

Dated:  December 16, 2021                                  s/Wilhelmina M. Wright
                                                                              Wilhelmina M. Wright
                                                                              United States District Judge